UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| BURL WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 6: 14-172-GFVT |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| K. BENNETT-BAKER, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Burl Washington is an inmate confined at the Federal Correctional Institution -
Williamsburg in Salters, South Carolina.  On July 21, 2014, Washington filed a *pro se* civil
rights complaint challenging the sufficiency of medical care provided for glaucoma and cataracts
pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) and the
Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80.  [R. 1]  Following service of
process, the defendants moved to dismiss the complaint, or in the alternative, for summary
judgment.  [R. 9]  Washington has filed his response to that motion [R. 16, 17] to which the
defendants have replied.  [R. 18] For the reasons provided herein, the Defendant's motion will be
GRANTED.

**I**

In his complaint, Washington indicates that he was diagnosed with glaucoma in 2004, but
that his doctor had implemented a treatment plan that was effective in controlling his eye
pressures and preventing the loss of vision.  [R. 1, p. 2]  In 2008, Washington was convicted of
federal drug trafficking offenses and sentenced to thirty years incarceration.  While incarcerated
at a federal prison in Greenville, Illinois, Washington underwent a series of surgical procedures

1

on his eyes in March 2012 at Barns Jewish Hospital.  Washington alleges that during March and April, medical staff at the prison failed to provide necessary post-surgical care and struck him in the back of the head, surgical stitches in his left eye broke, and that his ocular pressure increased from nine to an unsafe level of 27.  [R. 1, p. 3] Washington did not name any medical staff at that facility as defendants to this action.

Washington was transferred out of that institution on April 30, 2012, and arrived at the United States Penitentiary-McCreary ("USP-McCreary") in Pine Knot, Kentucky on May 24. [R. 1-1, p. 16]  Mid-level practitioner Bennett-Baker evaluated Washington shortly after his arrival, reviewed with him the history of medical treatment for his eyes, and ordered a consultation with an optometrist.  [R. 9-1, p. 5; R. 9-4, p. 2]

Washington was examined by a contract optometrist on June 6, who prescribed latanoprost solution, brimonidine solution, and acetazolamide tablets to reduce the ocular pressure in his eyes.  In a follow-up appointment on July 11, the optometrist changed one of the prescriptions when Washington complained that it was causing stomach upset, discussed with Washington the effects that advanced glaucoma would have on his vision, and requested a consult with an ophthalmologist.  [R. 3-1, pp. 1-2; R. 9-3, pp. 27-30]

The optometrist met with Washington again on August 10, at which time Washington was issued specially-tinted reading glasses.  [R. 9-3, pp. 36-37] At another visit with the optometrist on October 15, Washington indicated that he had not been receiving his eye drops; however, the pharmacy stated that Washington had been issued his eye drops as prescribed.  [R. 9-3, pp. 43-44]

On October 29, Washington was examined by Dr. Henry, a contract ophthalmologist.  Dr. Henry recommended that Washington be referred to the Clinic for Glaucoma at the University of

Kentucky Medical Center ("UKMC") for evaluation of his left eye.  While Dr. Henry recommended surgery for removal of a cataract in Washington's right eye, he explained that Washington should expect minimal improvement in his vision even with the surgery.  [R. 9-3, pp. 47-48]  On October 31, the ophthalmologist also recommended cataract surgery for Washington's right eye, which was submitted to the BOP's Utilization Review Committee for consideration.  [R. 3-1, p. 2; R. 9-3, p. 51]

Washington was examined on a number of occasions in November and December 2012 or January 14, 2013 to address a viral eye infection.  Because it was determined at this time that the UKMC glaucoma specialist to whom Washington had been referred was no longer accepting new patients, Washington was then referred to a glaucoma specialist at the University of Louisville.  [R. 9-3, pp. 55-90]

On February 7, 2013, an ophthalmologist at the University of Louisville Primary Care Eye Clinic examined Washington.  Following the exam, the ophthalmologist prescribed Travoprost Z ophthalmologic solution and dorzolamide ophthalmologic solution for Washington and recommended cataract surgery for his right eye.  [R. 9-3, pp. 99-103]  From February to early June, Washington was seen during a number of follow-up appointments for eye care, although he also failed to appear for a number of appointments that he had previously requested during this period.  [R. 9-3, pp. 104-136]

Washington was examined by his glaucoma specialist at the University of Louisville on June 18, 2013, who recommended diode laser surgery for Washington's left eye.  [R. 9-3, pp. 139-141]  Following a June 24 examination at the Southern Kentucky Eye Center, ophthalmologist Dr. Mark Henry recommended cataract surgery on Washington's right eye. [R. 9-3, pp. 142-145]

Following pre-operative appointments in early July, on July 22, Washington was transported to Louisville for evaluation by ophthalmologist Dr. Mohay.  Following examination, Dr. Mohay concluded that:

> [Washington] is not a candidate for incisional surgery, and his vision loss is not a result of advanced cataract or any other treatable condition.  The only surgical option to further decrease the eye pressure of the left eye would be a laser procedure with cyclophotocoagulation, but this procedure could potentially take away the rest of the vision of the left eye, therefore I would only consider it as a last [resort] and only for making the patient comfortable if the eye pressure is causing severe eye pain.  At this point the best treatment option is to optimize his topical glaucoma medications and discontinue the steroid eyedrops.

[R. 9-3, pp. 168-171]  As a result, no cataract surgery was performed.

On August 23, 2013, contract optometrist Dr. Robinson reviewed Washington's medical records and, in consultation with Dr. Henry, concluded that Dr. Mohay's indication that the cataract in Washington's right eye was "mild" was likely an error.  Both agreed that the cataract in his right eye was large, and that surgery was necessary to restore vision in that eye.  Dr. Robinson agreed that Dr. Henry should perform cataract surgery in Washington's right eye.  He also began steps to obtain URC approval for glaucoma surgery on Washington's left eye and to have it scheduled with Dr. Moore, a newly-arrived glaucoma specialist at UKMC.  [R. 9-1, p. 13; R. 9-3, pp. 182-185]

On September 17, the BOP designated Washington as Care Level 2.  On October 22, he was transferred to another federal penitentiary.  [R. 9-3, p. 196]

Dissatisfied with his medical care, Washington sought administrative settlement of his claims that he was not receiving prompt and sufficient treatment for cataracts and glaucoma by filing a claim form with the Bureau of Prisons ("BOP") on February 3, 2014.  [R. 3, pp. 2-3] The BOP denied Washington's claim on May 14.  [R. 3-1, p. 3]

Washington filed his complaint in this case on July 17, wherein he contends that the medical staff at USP-McCreary acted with deliberate indifference to his serious medical needs for proper care for his eyes.  [R. 1.]  Specifically, Washington claims that medical staff failed to ensure that he was examined and treated by a glaucoma specialist from June to December 2012 and failed to follow the plan of care and instructions from his treating eye physicians.  [R. 1, p. 3]

## II

First, the defendants contend that Washington's FTCA claim must be dismissed because he has not provided expert testimony to support his claim that the medical care he received fell below the applicable standard of care [R. 9-1, pp. 17-18].  Second, they believe that his disagreement with his treating physicians over his medical care fails to establish deliberate indifference under the Eighth Amendment [R. 9-1, pp. 22-26].  Finally, Defendants argue that Barron and Jones cannot be held vicariously liable for decisions regarding Washington's medical care with which they were not involved [R. 9-1, pp. 26-27].

The Court must treat the defendants' motion to dismiss the complaint as a motion for summary judgment under Rule 56 because they have attached and relied upon documents and declarations extrinsic to the pleadings in support of it.  Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).  A motion under Rule 56 challenges the viability of the another party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).  If the moving party demonstrates that there is no genuine dispute as to any material fact and that she is entitled to a judgment as a matter of law, she is entitled to

summary judgment. *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992).

The moving party does not need its own evidence to support this assertion, but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remains for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts.").

The court reviews all of the evidence presented by the parties in a light most favorable to the responding party, with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the responding party to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

## A

With respect to Washington's Eighth Amendment claim asserted under *Bivens*, he contends that his health care providers displayed deliberate indifference to his serious medical needs between June and December 2012 by failing to ensure that he was properly treated by a

glaucoma specialist and failing to follow the plan of care established by his treating physicians. [R. 1, p. 3]

As a preliminary matter, defendants correctly note that Washington's *Bivens* claims against the individual defendants in their official capacities must be dismissed. This is the case because a *Bivens* claim may only be asserted against federal officials in their individual capacities. *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011) (*Bivens* claims may be asserted against federal officials only in their individual capacities); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003).

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Blackmore v. Kalamazoo County*, 390 F. 3d 890, 895 (6th Cir. 2004) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff asserting deliberate indifference to his serious medical needs must establish both the objective and subjective components of such a claim. *Jones v. Muskegon Co.*, 625 F. 3d 935, 941 (6th Cir. 2010). The objective component requires the plaintiff to show that the medical condition is "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), such as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F. 3d 510, 518 (6th Cir. 2008) (citations omitted). The subjective component requires the plaintiff to show that prison officials actually knew of a substantial risk of harm to the plaintiff's health but consciously disregarded it. *Cooper v. County of Washtenaw*, 222 F. App'x 459, 466 (6th Cir. 2007); *Brooks v. Celeste*, 39 F. 3d 125, 128 (6th Cir. 1994).

In light of Washington's lengthy and established medical history of cataracts and glaucoma, there is little question that his medical conditions were "sufficiently serious" to implicate the Eighth Amendment.  However, to that lengthy and established history of eye conditions there is a correspondingly lengthy and established history of medical treatment by the BOP for those conditions.  The nearly two hundred pages of medical records provided by the BOP cover only the care provided for Washington's eye conditions for the sixteen-month period between May 2012 and October 2013.  [R. 9-1, pp. 14-204]  Those medical records establish a narrative of ongoing treatment for persistent and recurring cataracts, glaucoma, and viral infections.  Washington's treating physicians altered his medications and treatment plans at various times to address his complaints of stomach upset, to treat a viral infection, and to account for new medical data obtained from examinations and testing regarding his cataracts and ocular pressures.  During this period, Washington was examined and/or treated several times a month to address his severe glaucoma.

Where, as here, the plaintiff has received abundant medical treatment but merely disagrees with the course of treatment determined by physicians in the exercise of their medical judgment, his claim sounds in state tort law – it does not state a *prima facie* claim of deliberate indifference under the Eighth Amendment.  *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law."); *Durham v. Nu'Man*, 97 F. 3d 862, 868-69 (6th Cir. 1996); *Rodriquez v. Lappin*, No. 08-347-GFVT, 2009 WL 2969510, at *5-6 (E.D. Ky. Sept. 11, 2009).  Even "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed

a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F. 3d 693, 703 (6th Cir. 2001).

Thus, Washington's "disagreement with the exhaustive testing and treatment he received while incarcerated does not constitute an Eighth Amendment violation." *Lyons v. Brandy*, 430 F. App'x 377, 381 (6th Cir. 2011) (*citing Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).  See *Taylor v. Carr*, No. 5:14-273-DCR, 2014 WL 6775231, at *3-4 (E.D. Ky. Dec. 2, 2014) (holding that inmate failed to state deliberate indifference claim where he merely disagreed with treating ophthalmologist's medical judgment that surgery for retinal detachment would be futile); *Matthews v. Doe*, No. 12-2517(JBS), 2013 WL 244984, at *4-5 (D.N.J. Jan. 22, 2013) (holding that plaintiff failed to state a claim for deliberate indifference where he merely disagreed with ophthalmologist's medical judgment that cataract removal surgery was not clinically indicated); *Nichols v. Lappin*, No. 3:11-CV-1210, 2012 WL 1902567, at *5-6 (M.D. Pa. May 25, 2012) (granting summary judgment regarding claimed delay in cataract surgery absent evidence that delays were intentional or consequence of improper purpose).

The Court further agrees that Washington has failed to state a claim against defendants Jones and Barron where Washington's complaint does not allege that either was personally involved in making decisions regarding his medical care.  Each has disavowed any knowledge of Washington's health conditions or participation in decision-making regarding his medical care. [R. 9-5, pp. 1-3; R. 9-6, pp. 1-4]  A plaintiff "must allege that the defendant[ ][was] personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (*citing Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)).  The mere fact that an

9

official supervises the person who commits the conduct of complained of is not enough.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981).

### B

With respect to Washington's claim against the United States under the FTCA, Washington contends that the medical care he received from health care professionals in the employ of the United States fell below the applicable standard of care.  The FTCA constitutes a limited waiver of the sovereign immunity enjoyed by the United States for claims based upon "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant."  28 U.S.C. § 1346(b); *Matthews v. Robinson*, 52 F. App'x 808 (6th Cir. 2002).  The law of the state where the relevant conduct occurred determines the existence and scope of its liability.  *Rayonier Inc. v. United States*, 352 U.S. 315, 318 (1957).

Because Washington alleges that the medical care he received at USP-McCreary fell below the applicable standard of care, the Court looks to Kentucky's law of negligence to determine whether he has presented the essential components of his claim.  *Id*.  Under Kentucky law, to establish a *prima facie* case of medical malpractice a plaintiff must prove that the given treatment fell below the degree of care and skill expected of a reasonably competent practitioner and that the negligence proximately caused the plaintiffs injury or death.  *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982).  Negligence is never presumed "from the mere evidence of mental pain and suffering of the patient, or from failure to cure, or poor or bad results, or because of the appearance of infection."  *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. App. 2006).  Instead, "[t]o survive a motion for summary judgment in a medical malpractice case in which a medical

expert is required, the plaintiff must produce expert evidence or summary judgment is proper." *Id.* (*citing Turner v. Reynolds*, 559 S.W.2d 740, 741-42 (Ky. App. 1977)); *Blankenship v. Collier*, 302 S.W.3d 665, 675 (Ky. 2012) ("[A] plaintiff bringing a typical medical malpractice case is required by law to put forth expert testimony to inform the jury of the applicable medical standard of care, any breach of that standard and the resulting injury."). The plaintiff can provide evidence of the applicable standard of care from a variety of sources. For instance, "the necessary expert testimony may be supplied by the defendant's admissions during discovery, or through medical evidence obtained from other treating physicians." *Vance By and Through Hammons v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996) (*citing Perkins v. Hausladen*, 828 S.W.2d 652, 655-56 (Ky. 1992)).

Kentucky does recognize a "common knowledge" exception, obviating the need for expert testimony to establish the standard of care "where the common knowledge or experience of laymen is extensive enough to recognize or to infer negligence from the facts." However, the exception is very narrow, and is generally limited to circumstances involving obvious error by the physician, such as where a surgeon amputates the wrong limb or leaves a foreign object in the body. *Rose v. United States*, No. 09-104-ART, 2011 WL 839548, at *2 (E. D. Ky. Mar. 7, 2011). The common knowledge of a layman is not sufficient to make a determination regarding the proper treatment of Washington's medical conditions, rendering this exception inapplicable to plaintiff's claims. *Blankenship*, 302 S.W.3d at 670-71.

Here, Washington has not provided expert testimony to support his claim that the medical care given by the defendants fell below the applicable standard of care and caused his injuries. He has therefore failed to establish a *prima facie* case of medical negligence. *Andrew*, 203 S.W.3d at 170; *see also Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 124 (Ky. 1991) ("It is an

accepted principle that in most medical negligence cases, proof of causation requires the testimony of an expert witness because the nature of the inquiry is such that jurors are not competent to draw their own conclusions from the evidence without the aid of such expert testimony.").  The Court will therefore grant the defendants' motion for summary judgment on Washington's FTCA claim.

Accordingly, **IT IS ORDERED** that:

1.      The motion of defendants Karen Bennett-Baker, Rhonda Jones, Beverly Barron, and the United States of America for Summary Judgment [R. 9] is **GRANTED**.

2.      Plaintiff's complaint [R. 1] is **DISMISSED**.

3.      The Court will enter an appropriate judgment.

4.      This action is **STRICKEN** from the active docket.


This 30th day of September, 2015.

Signed By:

*Gregory F. Van Tatenhove*

United States District Judge